UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BRANDON LEE SCROGGIN,

Plaintiff,

v.

WEXFORD HEALTH SOURCES, INC.,
et al.,

Defendants.

CAUSE NO. 3:20-CV-664-RLM-MGG

OPINION AND ORDER

Brandon Lee Scroggin, a prisoner proceeding without a lawyer, filed this lawsuit detailing a history of being assaulted by prison staff and then not getting the medical care he thought he needed. He sues several members of the prison medical staff, the prison warden, and the company that provides medical care in the prison. The court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. A filing by an unrepresented party "is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

## I. Individual Medical Defendants

Under the Eighth Amendment, inmates are entitled to adequate medical care. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must

satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." Board v. Farnham, 394 F.3d 469, 478 (7th Cir. 2005).

## A. Need for Emergency Treatment

The complaint details several instances in which prison staff allegedly assaulted Mr. Scroggin. Mr. Scroggin claims that his pain and injuries weren't treated, but as detailed later in this opinion, he was seen often by the medical defendants while on suicide watch and throughout various hunger strikes. None of the defendants deemed that his condition required immediate treatment and instead insisted he submit a healthcare request form. It's not deliberate indifference to insist an inmate follow administrative procedures to receive medical care for non-urgent matters. *See* Lewis v. McLean, 941 F.3d 886, 894 (7th Cir. 2019) ("Nurse McLean did not think emergency care was necessary when Mr. Lewis could move his limbs, breathe, and talk; in other words, she exercised her professional judgment. A

treatment decision that's based on professional judgment cannot evince deliberate indifference." (quotation marks and brackets omitted)); <u>Rankin v. Baker</u>, 770 F. App'x 752, 754-755 (7th Cir. 2019) (concluding "[a] reasonable jury . . . could not find that Dr. Baker's referral to the sick-call system was blatantly inappropriate and lacked professional judgment" when he told inmate that "he treated only blood-pressure issues in the hypertension clinic unless the inmate presented an emergency, which his follicle condition and knee pain were not" (quotation marks omitted)). Mr. Scroggin insists that he should have been pulled out of his cell for immediate care, and he sues every healthcare staff with whom he came into contact. But blanket allegations of wrongdoing don't state a plausible claim for deliberate indifference. Mr. Scroggin must allege facts to suggest each medical defendant was aware of, but disregarded, signs that his condition was an emergency and couldn't be handled appropriately through a healthcare request.

In one instance, Mr. Scroggin makes a specific allegation that might suggest he needed immediate medical attention. He says that on May 14, 2020, he told Director of Nursing Livers that he was being refused medical treatment and says he showed her that his rib cage stuck out 4-6 inches because of a February 2020 assault. ECF 2 at ¶¶ 5, 10, 33. It's implausible that Mr. Scroggin's ribs were broken to that extent for so long.[1] <u>See</u> <u>Atkins v. City of Chicago</u>, 631 F.3d 823, 832 (7th Cir. 2011)

---

[1] To explain, medical literature defines a "severely displaced rib" as "anywhere from 50% rib thickness transposition to bi-cortical displacement." Zachary Mitchel Bauman et al., *Rib Fracture Displacement Worsens over Time*, EUR. J. TRAUMA EMERG. SURJ., Mar 27, 2020 at 1-6, https://ncbi.nlm.nih.gov/pmc/articles/PMC7223740/. Given that "the average thickness of a rib is 8.4 mm and the average height is 12 mm," *id.*, (half an inch or smaller), a 4-6 inch displacement for three months is implausible.

("So suppose some of the plaintiff's factual allegations are unrealistic or nonsensical and others are not, some contradict others, and some are 'speculative' in the sense of implausible and ungrounded. The district court has to consider all these features of a complaint en route to deciding whether the complaint has enough substance to warrant putting the defendant to the expense of discovery."). The reasonable inference is that his ribs were still painful from the assault. Because the complaint of sore ribs wouldn't have put Director Livers on notice of an emergency, his description of the incident states no claim.

In another instance, Mr. Scroggin says that after his hand was slammed in his cuff port on May 9, 2020, he again didn't receive immediate medical attention from the officers involved. ECF 2 at ¶ 26. He says his hand swelled to the size of a boxing glove. *Id.* at ¶ 29. When "African guy nurse" came for medication pass that night, Mr. Scroggin told him about the incident, but the nurse didn't pull him out to get medical attention. *Id.* The degree of swelling alleged suggests that Mr. Scroggin needed more prompt care than he received and that "African guy nurse" was aware of that need. But Mr. Scroggin can't proceed against an unidentified defendant described only as "African guy nurse." "[I]t is pointless to include lists of anonymous defendants in federal court; this type of placeholder does not open the door to relation back under Fed. R. Civ. P. 15, nor can it otherwise help the plaintiff." Wudtke v. Davel, 128 F.3d 1057, 1060 (7th Cir. 1997) (citations omitted). Therefore, "African guy nurse" will be dismissed.

## B. Healthcare Requests

In an attempt to receive treatment for his injuries, Mr. Scroggin alleges that he submitted multiple healthcare requests that went unanswered. A mere disagreement with medical professionals about the appropriate course of treatment doesn't amount to deliberate indifference, nor does negligence or even medical malpractice. Arnett v. Webster, 658 F.3d 742, 751 (7th Cir. 2011). That said, when "prison officials utterly fail to provide care for a serious medical condition, the constitutional violation is obvious . . .." Campbell v. Kallas, 936 F.3d 536, 548 (7th Cir. 2019). Additionally, "inexplicable delay in responding to an inmate's serious medical condition can reflect deliberate indifference," particularly when "that delay exacerbates an inmate's medical condition or unnecessarily prolongs suffering." Goodloe v. Sood, 947 F.3d 1026, 1031 (7th Cir. 2020) (quotation marks omitted). "[W]hether the length of a delay is tolerable depends on the seriousness of the condition and the ease of providing treatment." Petties v. Carter, 836 F.3d 722, 730 (7th Cir. 2016). "Even a few days' delay in addressing a severely painful but readily treatable condition suffices to state a claim of deliberate indifference." Perez v. Fenoglio, 792 F.3d 768, 781 (7th Cir. 2015) (quoting Smith v. Knox County Jail, 666 F.3d 1037, 1040 (7th Cir. 2012)). At this point, it is necessary to carefully review the allegations to see which defendants could be held responsible for the unanswered medical requests.

Staff allegedly assaulted Mr. Scroggin and hurt his ribs on February 5, 2020. ECF 2 at ¶ 5. The staff member involved (who is not a defendant here) didn't get him

medical attention, so Mr. Scroggin tried to hang himself. *Id.* Mr. Scroggin was evaluated by a nurse and mental health, then placed on suicide watch. *Id.* When he still didn't get medical attention for his injuries from the assault, Mr. Scroggin went on a hunger strike. *Id.* at ¶ 7. Nurse Purdue evaluated him per hunger strike protocol, but when Mr. Scroggin complained about his injuries, Nurse Purdue told him he needed to fill out a healthcare request. *Id.* Because Mr. Scroggin was on suicide watch, he had no access to anything that he could use to fill one out. *Id.* at ¶¶ 6-7. Mr. Scroggin states a claim against Nurse Purdue for telling him to fill out a form to access medical care, knowing that was impossible to do so.

Mr. Scroggin next claims that he was staff assaulted him on February 18, 2020, when he was choked and slammed face first into the floor. ECF 2 at ¶ 10. He saw a nurse (not a defendant here) in urgent care after the assault, but he says he didn't get anything for the pain even though his face and eye were badly swollen. *Id.* He filled out two medical requests on February 26, 2020, and started another hunger strike that lasted from February 27, 2020, through March 10, 2020. *Id.* at ¶¶ 11-12. He saw several nurses who came to take his vitals, but when he complained of being in pain, they told him to wait his turn because there were a lot of health cares to attend to. *Id.* at ¶ 12. He asked for pain medication but was told a doctor had to prescribe it. *Id.* Here, the complaint does not indicate who was personally involved in receiving or processing those healthcare requests. Mr. Scroggin can't hold every nurse who saw him responsible for the unanswered healthcare requests. *See Burks v.*

*Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job.").

Mr. Scroggin's hunger strike didn't result in getting him medical attention for his injuries, so he ended it. ECF 2 at ¶ 14. He filled out five healthcare requests on March 12, 2020, and gave them to Nurse Sandra Allen. *Id.* He wasn't seen, so he filled out two more medical requests on March 25, 2020, and handed them to a sergeant, who in turn handed them to Nurse Allen. *Id.* at ¶ 17. He still wasn't seen. Mr. Scroggin states a claim upon which relief can be granted against Nurse Allen, who received the unanswered healthcare requests.

Mr. Scroggin says a correctional officer (not a defendant here) assaulted him on May 9, 2020 by slamming his hand in the cuff-port. ECF 2 at ¶ 26. He didn't receive medical treatment right away. *Id.* Mr. Scroggin says he was up all night in unbearable pain from his swollen hand after "African guy nurse" didn't pull him out on a medication pass that night for treatment. *Id.* at ¶¶ 27-29. When he saw "African guy nurse" again the next night, "African guy nurse" said Mr. Scroggin was supposed to have been seen during day shift. *Id.* at ¶ 30.

The complaint alleges Mr. Scroggin's hand was x-rayed two days after the May 9 assault. ECF 2 at ¶ 32. Mr. Scroggin complains that he needed an x-ray of his wrist, not his hand. But "a failure to seek a particular diagnostic technique, like imaging, 'is a classic example of a matter for medical judgment,' amounting to, '[a]t most,' medical malpractice, which just isn't enough." <u>Murphy v. Wexford Health Sources,</u>

Inc., 962 F.3d 911, 916 (7th Cir. 2020) (alteration in original) (quotation marks and citation omitted) (quoting Estelle v. Gamble, 429 U.S. 97, 107 (1976)).

Mr. Scroggin alleges that staff assaulted him again on the morning of May 21, 2020, by slamming his head into a concrete wall and his wrist yanked so hard that he heard a pop. ECF 2 at ¶ 34. He didn't see medical staff until Nurse Allen came by at medication pass that night. *Id.* at ¶ 35. He told her that he had been knocked unconscious for a couple of minutes, he thought his wrist was broken, and his forehead was swollen like a pumpkin. *Id.* He gave her a healthcare request. *Id.* She gave him nothing for the pain because she said a doctor had to prescribe it. *Id.* The healthcare request went unanswered. These allegations state a claim against Nurse Allen, who received the healthcare requests.

Mr. Scroggin still had not been seen by June 15, 2020. ECF 2 at ¶ 43. "African guy nurse" told him that he was supposed to have been seen already and gave him two Tylenol. *Id.* Mr. Scroggin then began receiving two Tylenol twice a day. *Id.* at ¶ 44. Mr. Scroggin alleges that for three days in a row, from June 19-21, 2020, Nurse Atkinson refused to give him his pain medication when she was passing out morning medication because he had filed grievances on medical and staff. *Id.* at ¶ 46. The complaint states a claim against Nurse Atkinson for withholding pain medication for a reason other than an exercise of medical judgment.

Nurse Kline evaluated Mr. Scroggin on July 9, 2020. ECF 2 at ¶ 51. She emailed the doctor (not a defendant here), and he responded that since the injuries

were 6-8 weeks old, there was no need for x-rays or pain medication. *Id.* at ¶ 53. Mr. Scroggin alleges that his pain continues.

## II. Warden Galipeau

Mr. Scroggin sues Warden Galipeau for deliberate indifference to his medical needs. He alleges that he personally saw Warden Galipeau on February 12, March 9, and March 10, 2020, and told him that he wasn't receiving medical care for his injuries, but the warden did nothing to help. ECF 2 at ¶¶ 9, 13. A lawsuit against a person under § 1983 requires "personal involvement in the alleged constitutional deprivation to support a viable claim." Palmer v. Marion Cnty., 327 F.3d 588, 594 (7th Cir. 2003). Defendants cannot be held liable simply because they oversee operations at the prison or supervise prison officers. *See* Burks v. Raemisch, 555 F.3d at 594. However, "deliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or turns a blind eye to it." Perez v. Fenoglio, 792 F.3d at 781 (quotation marks and brackets omitted). "[I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." Arnett v. Webster, 658 F.3d at 755 (citing Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004)). But where non-medical prison officials receive communications that are sufficient in their "content and manner of transmission" to give those officials "notice to alert him or her to an excessive

9

risk to inmate health or safety[,]" then there is a duty to take some action. <u>Arnett v. Webster</u>, 658 F.3d at 755 (quotation marks omitted). At the pleading stage, Mr. Scroggin has adequately alleged that Warden Galipeau was personally aware of the lack of medical care and did nothing to rectify it.

### III. Wexford Health Sources, Inc.

Mr. Scroggin also sues Wexford Health Sources, Inc., the private corporation contracted to provide medical care in the prison. He says Wexford is liable for its employees not following policies and for hiring unfit staff. ECF 2 at ¶ 58. A "private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights." <u>Johnson v. Dossey</u>, 515 F.3d 778, 782 (7th Cir. 2008) (quotation marks omitted). The company itself must have unconstitutional policies or practices. *See* <u>J.K.J. v. Polk Cnty.</u>, 960 F.3d 367, 377 (7th Cir. 2020); <u>Rice v. Corr. Med. Servs.</u>, 675 F.3d 650, 675 (7th Cir. 2012) (citing <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658 (1978)). While Mr. Scroggin alleges Wexford hires unfit staff and complains about the lack of accountability, he does not include facts that plausibly allege Wexford has an official policy of providing inadequate medical care to inmates. Instead, he is suing Wexford based on the individual decisions and actions of the medical staff. This isn't a basis for permitting Mr. Scroggin to proceed against Wexford.

For these reasons, the court:

(1) GRANTS Brandon Lee Scroggin leave to proceed on a claim against Nurse Purdue in his individual capacity for compensatory and punitive damages for making Mr. Scroggin fill out a medical request on February 5, 2020, to receive medical care when he was unable to do so while on suicide watch in violation of the Eighth Amendment;

(2) GRANTS Brandon Lee Scroggin leave to proceed on a claim against Nurse Sandra Allen in her individual capacity for compensatory and punitive damages for the unanswered healthcare requests she accepted from Mr. Scroggin in March and May 2020 in violation of the Eighth Amendment;

(3) GRANTS Brandon Lee Scroggin leave to proceed on a claim against Nurse Atkinson in her individual capacity for compensatory and punitive damages for withholding pain medication from June 19-21, 2020, without a medical reason in violation of the Eighth Amendment;

(4) GRANTS Brandon Lee Scroggin leave to proceed against Warden Galipeau in his individual capacity for compensatory and punitive damages for being aware that Mr. Scroggin's serious medical needs in February and March 2020 were not being treated in violation of the Eighth Amendment;

(5) DISMISSES Wexford Health Services, Inc., Rebeck, Dorothy Livers, Kline, and Unknown "African Guy Nurse;"

(6) DISMISSES all other claims;

(7) DIRECTS the clerk to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process

on) Nurse Sandra Allen, Nurse Purdue, and Nurse Atkinson at Wexford of Indiana, LLC, with a copy of this order and the complaint (ECF 2), pursuant to 28 U.S.C. § 1915(d);

(8) DIRECTS the clerk to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Warden Galipeau at the Indiana Department of Correction with a copy of this order and the complaint (ECF 2), pursuant to 28 U.S.C. § 1915(d);

(9) ORDERS the Indiana Department of Correction and Wexford of Indiana, LLC, to provide the full name, date of birth, and last known home address of any defendant who does not waive service, if they have such information; and

(10) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), Warden Galipeau, Nurse Sandra Allen, Nurse Purdue, and Nurse Atkinson to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on May 17, 2021

s/ Robert L. Miller, Jr.
JUDGE
UNITED STATES DISTRICT COURT